Filed 9/9/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CAROL MALETI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RODNEY W. WICKERS et al.,<br><br>    Defendants and Appellants. | H048393<br>(Santa Cruz County<br> Super. Ct. No. 19CV02276)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing filed on behalf of appellants Law Office of Rodney W. Wickers, Rodney W. Wickers, and Christina M. Wickers is denied.

The petition for rehearing filed on behalf of respondent and cross-appellant Carol Maleti is denied.

On the court's own motion, it is ordered that the opinion filed August 15, 2022, be modified as follows:

On page 15, first full paragraph, fifth line:

Delete "resolved" and replace it with "decided"


On page 17, in the heading identified as *(1)*:

Delete "Resolved" and replace with "Terminated"; delete "Resolution of"; after "Was" add "Terminated"

On page 18, second full paragraph, following the first sentence, delete the parenthetical citation, and insert the following:

As the Supreme Court has explained, " '[w]hether a prior action was terminated favorably tends to show the innocence of the defendant in the prior action . . . [, an issue] not affected by the objective tenability of the claim. In short, these two elements of the malicious prosecution tort serve different purposes, and the legal tenability of the underlying action is not the standard by which to judge whether the action was terminated in [plaintiff's] favor.' [Citation.]" (*Crowley*, *supra*, 8 Cal.4th at p. 686.)

On page 19, footnote 7, first sentence:
Delete "resolution on" and replace with "disposition of"

On page 20, first partial paragraph, first partial sentence:
Delete "resolved" and replace with "terminated"

On page 20, first partial paragraph, first full sentence:
Delete "resolved" and replace with "disposed of"

On page 22, second full paragraph, fourth sentence:
Delete "resolved" and replace with "disposed of"

On page 23, first partial paragraph, second full sentence:
Delete "resolved" and replace with "disposed of"

On page 33, first partial paragraph, second full sentence, after "remand" and before the comma, insert the following:
(see § 425.16, subd. (b)(3))

2

On page 38, delete the entire second paragraph, except for footnote 14 and footnote 15. Before footnote 14, insert the following sentence:

In their memoranda filed below in support of their anti-SLAPP motion, Attorneys failed to address the issue of probable cause for the initiation and prosecution of the six Easement Claims against the Maleti Respondents.

Following that new sentence and the existing footnote 14, and before the existing footnote 15, insert the following sentence:

Further, while Attorneys in their appellate briefs—citing the joint declaration of Rodney Wickers and Christina Wickers—argue that probable cause existed because Maleti allegedly (1) created an ambiguity concerning easement rights in his deed to Farkas, and (2) later attempted to conceal his alleged agreement with Farkas, they do not address how it was objectively tenable to initiate and prosecute the Easement Claims against the Maleti Respondents when they no longer held any interest in the subject properties.

On page 39, at the end of the first paragraph, insert new footnote 16 as follows:

In concluding that Carol made a prima facie showing that the six Easement Claims were not supported by probable cause, we make three additional observations. First, in reaching this conclusion—and notwithstanding that Attorneys' appellate briefs contained only two citations to the record in support of their probable cause argument, one being the joint declaration and the other being to an apparent legal description that is illegible— we have considered the entire record, including the evidence presented by Attorneys below in support of their special motion to strike. Second, in their petition for rehearing, Attorneys argued that there was significant evidence below supporting probable cause for asserting claims against the Maleti Respondents. We note that, although Attorneys' appellate briefs contained only two citations to the record concerning the probable cause element, their petition included at least 15 new citations to the appellate record that could have, and should have, been included in their briefs on appeal. (See *Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308 ["arguments, including

3

insufficiency of the evidence, cannot be raised for the first time in a petition for rehearing"].)  Third, our conclusion that Carol made a prima facie showing of the element of absence of probable cause is, of course, not the final word in the litigation.  Our decision only permits Carol's malicious prosecution claim to go forward.  It is up to the trial court to determine ultimately whether any or all of the six Easement Claims were or were not objectively tenable, based upon all evidence presented by the parties.  (See § 425.16, subd. (b)(3) ["[i]f the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case"]; see also *Rasmussen v. Superior Court* (2011) 51 Cal.4th 804, 808 [conclusion that trial court had erroneously granted defendant's anti-SLAPP motion did not result in a finding that the action was finally decided in the plaintiff's favor]; *Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1448, fn. 5 [in reviewing order denying special motion to strike malicious prosecution claim, the trial court's "prior rulings did not establish probable cause as a matter of law"].)

There is no change in the judgment.

BAMATTRE-MANOUKIAN, ACTING P.J.

DANNER, J.

WILSON, J.

*Maleti v. Wickers et al.*
**H048393**

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| CAROL MALETI, | H048393 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 19CV02276) |
| v. | |
| RODNEY W. WICKERS et al., | |
| Defendants and Appellants. | |


## I.     INTRODUCTION

At the time of his death in November 2013, Andrew Farkas (Farkas) owned Santa Cruz County property, Parcel 5 and Parcel 18.  His widow, Collette McLaughlin (McLaughlin), brought a probate petition to establish and enforce an access easement benefiting that property.  In the first amended petition, McLaughlin named several neighboring landowners in the petition.  She later added Sal Maleti (Maleti) and his corporation, the Sal Maleti Corporation (Maleti Corp.), as respondents.  Maleti Corp. had owned Parcel 18 and neighboring property many years earlier.  Maleti Corp. sold Parcel 18 to Farkas in 1993; after 2000, the corporation owned no property in the vicinity of the Farkas property.

McLaughlin asserted nine claims against Maleti and Maleti Corp. (hereafter, collectively, the Maleti Respondents).  Each of the nine claims was disposed of in favor of the Maleti Respondents:  five after McLaughlin failed to amend the probate petition

following the sustaining of a demurrer with leave to amend; one after the sustaining of a demurrer without leave to amend; and three after the granting of summary judgment.

The present lawsuit for malicious prosecution and abuse of process was then brought by Maleti's executor, Carol Maleti (Carol).[1]  Carol named as defendants McLaughlin and the attorneys who had represented her in the probate proceeding, Law Office of Rodney W. Wickers, Rodney W. Wickers, and Christina M. Wickers (collectively, Attorneys).  Carol alleged, inter alia, that McLaughlin and Attorneys brought the probate proceeding against the Maleti Respondents without probable cause and with malice, and that the claims alleged in that proceeding were terminated in their favor on the merits.

Attorneys filed a special motion to strike the two claims alleged in the complaint under Code of Civil Procedure section 425.16 (special motion to strike, or anti-SLAPP motion).[2]  There was no dispute that the claims were based upon Attorneys' exercise of constitutionally protected activity, thereby satisfying the first prong of the anti-SLAPP statute.  Attorneys argued that Carol could not satisfy her burden of showing a probability that she would prevail on the two claims.  In an order filed September 15, 2020 (the Order), the trial court ruled in favor of Attorneys on Carol's claim for abuse of process, striking that cause of action.  The court, however, denied Attorneys' special motion to strike the malicious prosecution claim, concluding that Carol had shown a probability of succeeding on that claim.  The court also denied Attorneys' request for statutory attorney fees.

---

[1] We refer to Carol Maleti by her first name for clarity.  We mean no disrespect in doing so.  (See *Rubinstein v. Rubinstein* (2000) 81 Cal.App.4th 1131, 1136, fn.1.)

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 (*Jarrow Formulas*).)

Further statutory references are to the Code of Civil Procedure unless otherwise stated.

Attorneys challenge the Order denying the special motion to strike the malicious prosecution claim and the denial of attorney fees. Carol filed a cross-appeal, challenging the Order striking the abuse of process claim.

We conclude that Carol satisfied her burden of establishing that her malicious prosecution claim had " ''a minimum level of legal sufficiency and triability' [citation]." (*Jarrow Formulas*, *supra*, 31 Cal.4th at p. 738.) The first element of the tort is the favorable termination of the underlying proceeding on the merits. We hold that a malicious prosecution plaintiff, who has succeeded in all respects in defending a multiple-claim case, need not show that *all* such claims were resolved on the merits as long as *at least one claim* was terminated on the merits. Because Carol showed that six of the nine claims in the underlying probate proceeding were terminated on the merits in favor of the Maleti Respondents, she established the favorable termination element. We conclude further that Carol satisfied her burden of showing the legal sufficiency and an evidentiary basis supporting the elements of absence of probable cause and malice required for malicious prosecution. Accordingly, we conclude the court did not err in denying the special motion to strike the first cause of action for malicious prosecution.

We conclude further that Carol did not adequately plead a claim for abuse of process. Therefore, we reject Carol's cross-appeal, concluding the trial court properly granted the motion to strike the second cause of action for abuse of process.

Lastly, we conclude the trial court erred in denying Attorneys' request for attorney fees and costs under section 425.16, subdivision (c)(1) as the prevailing defendant. A defendant who prevails in part in an anti-SLAPP motion is generally entitled to an award of attorney fees and costs related to that partial success. In its denial of an award, the court below found that Attorneys derived no practical benefit from successfully moving to strike the abuse of process claim. Because this finding is not supported by the record, we conclude the court was required to award reasonable fees and costs in connection with Attorneys' successful challenge to the abuse of process claim.

.                                                              3

We will therefore reverse the Order only insofar as the trial court denied attorney fees and costs to Attorneys. We will remand the case to the trial court for further proceedings, including in that remand a directive that the court decide Attorneys' request for fees and costs in connection with their partially successful special motion to strike.

## II.   PROCEDURAL HISTORY

### A.   Background Concerning Farkas Probate Proceeding

Maleti was a real estate broker who received his California license in or about 1976. Maleti Corp., established in 1984, was solely owned and operated by Maleti and was engaged in the purchase and sale of real property. In 1988, Maleti Corp. purchased from Pacific Western Bank four real estate parcels in Boulder Creek, Santa Cruz County, that are referred to by the parties as Parcels 18, 19, 21, and 22. The parcels are located as follows:



In 1992, Maleti Corp. sold three of the four parcels (i.e., Parcels 18, 19, and 22). In April, Parcel 22 was sold to Andrew Opler. In May, Maleti Corp. sold Parcel 19 to John Willheim; at the time of the probate proceedings relevant here, Parcel 19 was owned by Ronald Wilson (Wilson) and Harold Patrick (Patrick). In August 1992, Maleti Corp. sold Parcel 18 to Farkas. Maleti was the listing agent; he did not represent Farkas. Farkas owned Parcel 18 until his death on November 1, 2013. At that time, Farkas also owned Parcel 5, located to the east of Parcel 18. In April 2000, Maleti Corp. sold Parcel 21 to Kendall and Renee King (collectively, the Kings).

### B.     The Farkas Probate Proceeding

Attorneys, on behalf of McLaughlin as administrator of the Farkas Estate, filed a petition for probate in January 2014.  On May 12, 2016, Attorneys filed a "Petition to Establish Estate's Claim of Ownership and for Order Directing its Transfer to Estate Pursuant to Probate Code Section 850."  McLaughlin alleged that at the time of his death, "[Farkas] held a prescriptive easement for ingress and egress with respect to the dirt road . . . located within [Parcels 19 and 21] . . . [and she was seeking] to legally record this easement."  It was alleged further that the Farkas Estate's property, Parcel 5, used primarily for timber harvesting, was only accessible by the subject dirt road easement.  McLaughlin requested that "[o]wnership of such property easement for ingress and egress over the dirt access road . . . immediately be transferred to [her], as administrator of decedent's estate."

Attorneys filed a First Amended Petition[3] in July 2016, naming the owners of Parcel 19 (Wilson and Patrick) and Parcel 21 (the Kings), as respondents.  This First Amended Petition, like the original Petition, sought an order transferring to the Farkas Estate a prescriptive easement for ingress and egress by a dirt road over Parcel 19 and Parcel 21.  It was also alleged that the Estate's property, Parcel 5 *and Parcel 18*, was only accessible by the subject dirt road easement.  Thereafter, Attorneys filed second and third amended petitions; neither pleading named Maleti or Maleti Corp. as respondents.

In April 2017, Attorneys filed a Fourth Amended Petition on behalf of McLaughlin, naming Wilson and Patrick, the Kings, Maleti and Maleti Corp. as respondents.  The Fourth Amended Petition included 10 claims—nine of which were directed against the Maleti Respondents—related to the Estate of Farkas's asserted easement rights over a private roadway identified in the pleading as the " 'Tradewinds Route,' " namely, (1) easement by

---

[3] The Petition and the five amended Petitions were each captioned "Petition to Establish Estate's Claim of Ownership and for Order Directing its Transfer to Estate Pursuant to Probate Code Section 850."

.                                                    6

prescription, (2) easement by implication, (3) easement by implied conveyance, (4) easement by express grant, (5) easement by necessity, (6) easement by estoppel, (7) declaratory relief to establish easement (not alleged against the Maleti Respondents), (8) negligence by interfering with Farkas's use of the easement for ingress and egress, (9) slander of title by denial of Farkas's existing easement and making false statements concerning it, and (10) to pierce the corporate veil of Maleti Corp. to establish that it was Maleti's alter ego (against Maleti only).  (The first six causes of action are collectively referred to as the Easement Claims.)

The Maleti Respondents filed a demurrer to the Fourth Amended Petition.  In September 2017, the probate court sustained the demurrer with leave to amend as to all nine causes of action.

Attorneys filed a Fifth Amended Petition on behalf of McLaughlin that tracked the same 10 causes of action that had been alleged in the Fourth Amended Petition.  The first five Easement Claims were no longer alleged against the Maleti Respondents.  The negligence claim included allegations that the Maleti Respondents breached duties to Farkas of (1) not interfering with his use of the Tradewinds Route and (2) preparing a grant deed of Parcel 18 without ambiguity regarding easements to and from that property.  The slander of title claim included allegations, inter alia, that the Maleti Respondents, in a December 1999 fax to the Kings' agent, "disparaged Farkas' property rights to the Tradewinds Route."

The Maleti Respondents filed a demurrer of to all four causes of action alleged against them in the Fifth Amended Petition.  In February 2018, the probate court sustained the demurrer *without* leave to amend as to the sixth cause of action for easement by estoppel, and it overruled the demurrer to the eighth through tenth causes of action.

Thereafter, the Maleti Respondents filed a motion for summary judgment as to the remaining causes of action, and on October 11, 2018, the court granted summary judgment.  Specifically, the court found that (1) the eighth cause of action for negligence was barred by the applicable statute of limitations (see § 338); (2) the ninth cause of action for slander of

.                                                    7

title was barred by the applicable statute of limitations (see *ibid.*); and (3) the tenth cause of action to pierce the corporate veil was not maintainable because it was a theory of vicarious liability, not a freestanding claim, and because no substantive claims existed against the Maleti Respondents, "there [was] no predicate liability for which Mr. Maleti can be vicariously liable."

A trial involving respondents Wilson, Patrick, and the Kings on the claims remaining against them occurred in October 2018. The court granted respondents' motion for judgment pursuant to section 631.8. The court found that McLaughlin had failed to meet her burden of proof with respect to any of the claims, and that she had not established that Parcel 18 owned by the Farkas Estate had an access easement over the Tradewinds Route that encumbered either Parcel 21 (the Kings) or Parcel 19 (Wilson/Patrick).

On February 19, 2019, the court entered judgment in favor of the Maleti Respondents.

C.     **The Current Litigation**

In March 2019, shortly after the judgment was entered in the underlying probate proceeding, Maleti passed away. On July 31, 2019, Carol, as Maleti's executor, filed a complaint for malicious prosecution and abuse of process against Attorneys and McLaughlin. (McLaughlin and Attorneys are collectively referred to as the Defendants.) Carol alleged that the underlying proceeding involved "utterly meritless" probate claims brought by the Defendants that they knew were time-barred but that they prosecuted for nearly 18 months until they were dismissed.

Carol alleged in the first cause of action for malicious prosecution that when the Defendants filed the Fourth and Fifth Amended Petitions, they had no factual or legal basis for asserting any of the claims alleged against the Maleti Respondents, and therefore no reasonable attorney would have thought that the claims were legally tenable. The claims were prosecuted by the Defendants with malice and bad faith for the purpose of extracting a settlement from the Maleti Respondents that bore no relationship to the merits of the claims.

.                                                                              8

The Maleti Respondents achieved a favorable and final termination on the merits as to each of the claims alleged.

In the second cause of action for abuse of process, Carol alleged that the Defendants engaged in willful acts against the Maleti Respondents in the probate proceedings by using the court process in improper ways to obtain a collateral advantage against them. The Defendants improperly named the Maleti Respondents as respondents despite there being no factual or legal basis for doing so and with knowledge that Maleti was in poor health.

### D.     Attorneys' Special Motion to Strike

On September 30, 2019, Attorneys filed a special motion to strike the complaint. They asserted that both causes of action arose out of the exercise of protected free speech and petitioning activity in the representation of their client in a probate proceeding. Attorneys asserted further that Carol was required to show a probability of prevailing. Carol opposed the special motion to strike, contending there was a probability she would succeed on her claims.

After a hearing on the special motion to strike, the court issued the Order on September 15, 2020. The court (1) noted that Carol had conceded that the claims alleged in the complaint arose out of activity protected under the anti-SLAPP statute; (2) held that Carol had shown a probability of prevailing as to the elements of the first cause of action for malicious prosecution and therefore denied the special motion to strike as to that claim; (3) granted the special motion to strike as to the second cause of action for abuse of process; and (4) denied Attorneys' request for attorney fees and costs in connection with the motion to strike.

Attorneys filed a timely appeal from the Order. Carol filed a timely cross-appeal from the Order.

.                                                                 9

# III.    DISCUSSION

## A.    Anti-SLAPP Motions to Strike

A SLAPP suit is one in which a plaintiff "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.  [Citation.]"  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.)  SLAPP suits may be disposed of summarily by a special motion to strike under section 425.16, which is "a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation."  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)  The statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  The Legislature has directed that the language of the statute be "construed broadly."  (§ 425.16, subd. (a).)

Subdivision (e) of section 425.16 (§ 425.16(e)) identifies four general categories of protected activities of petition or free speech.  The first two categories are relevant here:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

"[S]ection 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch.  By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit.  [[Citation.]"  (*Jarrow Formulas*, *supra*, 31 Cal.4th at pp. 734-735, fn. omitted.)  Likewise, since "the essence of the tort of abuse of process . . . [is] some misuse of process in a prior action[,] . . . it is hard to imagine an abuse of process claim that

.                                                    10

would not fall under the protection of the [anti-SLAPP] statute." (*Booker v. Rountree* (2007) 155 Cal.App.4th 1366, 1370.)

A motion to strike under section 425.16, subdivision (b)(1) is analyzed and resolved by "the court . . . engag[ing] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

To meet this burden under the second prong of the statute, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal. 4th 811, 821 (*Wilson*), superseded by statute as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547-548.) The plaintiff must show that its claim has "at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

Thus, "[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, original italics.)

.                                              11

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) In performing our de novo review, we " 'conduct[] an independent review of the entire record. [Citations.]' " (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.) "[O]ur review is conducted in the same manner as the trial court in considering an anti-SLAPP motion." (*Ibid.*) We review the trial court's decision, not its rationale. (See *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307.)

### B.    Malicious Prosecution:  Protected Activity

It is clear that the conduct alleged in the complaint arises out of protected activity. (See *Jarrow Formulas*, *supra*, 31 Cal.4th at pp. 734-735 [malicious prosecution suits arise out of protected activity under the anti-SLAPP statute].) Carol conceded below that Attorneys had met their burden of establishing that her malicious prosecution claim arose out of constitutionally protected conduct under the anti-SLAPP statute.

### C.    Malicious Prosecution (Appeal):  Probability of Prevailing

We address whether Carol met her burden of establishing a probability of prevailing on her malicious prosecution claim. (See § 425.16, subd. (b)(1).) Satisfying this second prong "requires only 'a minimum level of legal sufficiency and triability' [citation]." (*Jarrow Formulas*, *supra*, 31 Cal.4th at p. 738.)[4]

---

[4] To defeat the anti-SLAPP motion, Carol was required to establish " 'that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'

continued

.                                                    12

### 1.    *Malicious Prosecution Generally*

As the California Supreme Court has explained:  "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice.  The individual is harmed because he [or she] is compelled to defend against a fabricated claim which not only subjects him [or her] to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings.  In recognition of the wrong done the victim of such a tort, settled law permits him [or her] to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his [or her] reputation or impairment of his [or her] social and business standing in the community [citations], and for mental or emotional distress [citation]."  (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50-51, fn. omitted (*Bertero*).)  Although "malicious prosecution is not a tort 'favored by the law' . . . [t]his convenient phrase should not be employed to defeat a legitimate cause of action."  (*Id.* at p. 53.)

There are four essential elements to a malicious prosecution claim.  First, there had to have been a prior action "commenced by or at the direction of the defendant [that] was pursued to a legal termination in . . . [the] plaintiff's[] favor."  (*Bertero*, *supra*, 13 Cal.3d at

---

[Citations.]" (*Wilson*, *supra*, 28 Cal. 4th at p. 821.)  The court below in the Order denying the special motion to strike the malicious prosecution claim found the complaint to be legally sufficient, stating that Carol had properly pleaded favorable termination, lack of probable cause, and malice.  But the court did not find that Carol had made a sufficient prima facie evidentiary showing to support judgment in her favor on the claim.  Because (1) our review of the Order is de novo, (2) the parties addressed the second anti-SLAPP prong extensively below, and (3) the parties have briefed the issue on appeal, we will consider here whether Carol's complaint was legally sufficient *and* whether she made a sufficient prima facie showing with admissible evidence to support a favorable judgment on the malicious prosecution claim.  (See *Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 922.)

.                                                                     13

p. 50.)  (We will refer to this as the favorable termination element.)  Second, the defendant must have brought the prior action without probable cause.  (*Ibid.*)  Third, the defendant must have initiated the prior action with malice.  (*Ibid.*; see also *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341 (*Casa Herrera*).)  Fourth, the plaintiff must show resulting damage, which may include out-of-pocket losses of attorney fees and costs, as well as emotional distress and injury to reputation.  (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 90-91.)[5]

### 2. *Favorable Termination on the Merits*

#### a. **Applicable Law**

To establish a claim for malicious prosecution, "termination of the underlying action must reflect on the defendant's innocence.  'If [the termination] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement.  If, however, the dismissal is on technical grounds, for procedural reasons . . . it does not constitute a favorable termination.'  [Citations.]  'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].'  [Citations.]"  (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 (*Lackner*).)  The malicious prosecution plaintiff need not prove "that the prior proceeding was favorably terminated following trial on the merits.  However, termination must *reflect* on the merits of the underlying action.  [Citation.]"  (*Ibid.*, original italics.)  Thus, it is important to recognize that to establish the tort, favorable termination means

---

[5] Although Attorneys argued below that the claim failed because Carol had not adequately shown damage, they do not raise this question on appeal.  It is therefore abandoned.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)  In any event, Carol presented evidence that Maleti had paid over $283,000 in attorney fees and costs in defending the claims in the underlying proceeding.

.                                                                14

more than showing simply that the plaintiff " 'prevailed in an underlying action. . . . If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.' [Citation.]" (*Casa Herrera, supra*, 32 Cal.4th at p. 342.) "To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action.' " (*Id.* at p. 341.)

Thus, the termination of a case by a discretionary dismissal for failure to prosecute "reflect[s] on the merits of the action. . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted." (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827 (*Minasian*).) Other instances of favorable termination include cases where the prior case was resolved against the malicious prosecution defendant (1) by summarily disposing of contract and fraud claims through application of the parol evidence rule, a matter of substantive law (*Casa Herrera*, *supra*, 32 Cal.4th at pp. 342-345); (2) after a judgment of nonsuit because the plaintiff failed to designate an expert on causation (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 874); (3) by summary judgment that reflected on the merits of the claim (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149-1150 (*Sierra Club*)); and (4) by court dismissal because the claims were barred by the litigation privilege (*Berman v. RCA Auto Corp.* (1986) 177 Cal.App.3d 321, 323-326.)

On the other hand, termination based upon the action being barred by the statute of limitations is "deemed a technical or procedural as distinguished from a substantive termination." (*Lackner*, *supra*, 25 Cal.3d at p. 751.) Similarly, dismissal after the sustaining of a demurrer without leave to amend is not on the merits where it was based upon the jurisdictional defect of lack of standing. (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1590-1592.) And "a dismissal resulting from negotiation, settlement or agreement is generally not deemed a favorable termination of the proceedings. [Citations.]" (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335-1336; see also *Minasian*, *supra*, 80

.                                                      15

Cal.App.3d at p. 827, fn. 4 ["dismissal [through settlement] reflects ambiguously on the merits of the action"].)

A voluntary dismissal of the prior suit by the plaintiff—not resulting from a settlement—will, in general, constitute a favorable termination. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1401.) "[A] voluntary dismissal, even one without prejudice, may be a favorable termination which will support an action for malicious prosecution. [Citation.] 'In most cases, a voluntary unilateral dismissal is considered a termination in favor of the defendant in the underlying action . . . .' [Citations.]" (*Fuentes v. Berry* (1995) 38 Cal.App.4th 1800, 1808.) In many instances the dismissal "may be an implicit concession that the dismissing party cannot maintain the action and may constitute a decision on the merits." (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855 (*Eells*).) But " '[i]t is not enough . . . merely to show that the proceeding was dismissed.' [Citation.] The reasons for the dismissal of the action must be examined to determine whether the termination reflected on the merits. [Citations.]" (*Ibid.*)

### b.      Carol Showed Favorable Termination

Carol contends that she made a prima facie showing of favorable termination of the prior suit to support her claim for malicious prosecution. She acknowledges that the claims in the fifth amended petition for negligence and abuse of process were disposed of on the technical or procedural ground of a statute of limitations defense and therefore were not terminated on the merits. (See *Lackner*, *supra*, 25 Cal.3d at p. 751.)[6] But Carol asserts that

---

[6] Notwithstanding this acknowledgment, Carol argues elsewhere in her brief that the subsequent trial and judgment in favor of the remaining respondents (Wilson, Patrick, and the Kings) established that the negligence and slander of title claims against the Maleti Respondents were "never viable" because Farkas never had an easement over the Tradewinds Route. This argument—coupled with the fact that the Maleti Respondents asserted in their summary judgment motion that the two claims (in addition to being time-barred) were not substantively viable—suggests that Carol in fact contends that the summary judgment of the tort claims was on the merits. At oral argument, however, Carol's

continued

.                                              16

the other seven claims were disposed of on the merits by demurrer and summary judgment, thereby satisfying the favorable termination element of Carol's malicious prosecution claim.

Attorneys respond that Carol failed to show that the Maleti Respondents achieved a favorable termination on the merits because their "procedural win" through the probate court's granting summary judgment was insufficient to support a malicious prosecution claim. They conclude that "there was no termination *of the entire action* on the merits." (Italics added.)

Therefore, the essential issue in this case is the following: Where multiple claims were asserted in the prior action, none was successful, and at least one claim was decided on the merits, may the malicious prosecution plaintiff properly contend that the favorable termination element of the tort is satisfied? We will first address this legal question. After answering it in the affirmative, we will consider whether Carol established the element of favorable termination for malicious prosecution.

> ### *(1) Favorable Termination Occurs if All Claims Were Resolved in Favor of Prior-Suit Defendant and Resolution of at Least One Claim Was on the Merits*

We begin by noting that in evaluating whether there has been a favorable termination on the merits, the court " 'look[s] at the judgment as a whole in the prior action . . . .' [Citation.]" (*Casa Herrera, supra*, 32 Cal.4th at p. 341.) Although the disposition need not occur after a trial of the case on the merits (*ibid.*), a " 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. . . . If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it

---

counsel confirmed that the granting of summary judgment on the negligence and slander of title claims was based upon them being time-barred and was thus not a termination on the merits.

.                                                    17

would support a subsequent action for malicious prosecution." (*Lackner*, *supra*, 25 Cal.3d at p. 751, fn. omitted.)

The Supreme Court has held that a plaintiff may pursue a claim for malicious prosecution where one theory in the prior suit was pursued without probable cause, even if there was probable cause to pursue other theories. (*Bertero*, *supra*, 13 Cal.3d at pp. 55-57.) As the high court explained, "We see no reason for permitting plaintiffs and cross-complainants to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless." (*Id.* at p. 57, fn. omitted.) The Supreme Court has reaffirmed its holding in *Bertero*. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 686 (*Crowley*) [" 'a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause"].) Under the *Bertero* rule, therefore, "[a] claim for malicious prosecution need not be addressed to an entire lawsuit; it may . . . be based upon only some of the causes of action alleged in the underlying lawsuit. [Citations.]" (*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 333 (*Franklin Mint*).)

Favorable termination must be distinguished from the lack of probable cause element of the tort of malicious prosecution. (See *Crowley*, *supra*, 8 Cal.4th at p. 686 [" '[w]hether a prior action was terminated favorably tends to show the innocence of the defendant in the prior action . . . [, an issue] not affected by the objective tenability of the claim' "].) Thus, the fact that, under *Bertero*, " 'a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause [citation] does not alter the rule there must first be a favorable termination of the *entire* action. [Citation.]' [Citation.]" (*Crowley*, *supra*, at p. 686, original italics.)

Thus, "favorable termination requires favorable *resolution* of the underlying action in its entirety, not merely a single cause of action. [Citation.] '. . . [I]f the underlying plaintiff succeeds on any of his or her claims, the favorable termination requirement is unsatisfied and the malicious prosecution action cannot be maintained.' [Citation.]" (*Citizens of*

18

*Humanity, LLC v. Ramirez* (2021) 63 Cal.App.5th 117, 128, italics added.)  Accordingly, numerous cases have held that a malicious prosecution claim may not be maintained where the prior-suit defendant prevailed on one or more (but not all) claims.  One such case— relied upon by Attorneys here—is *Friedberg v. Cox* (1987) 197 Cal.App.3d 381 (*Friedberg*).  There, two attorneys had represented client in a prior medical malpractice action in which the client received a monetary settlement, and a total of $86,000 in fees was earned.  (*Id.* at p. 383.)  Failing to reach agreement on the division of fees, attorney Ingraham sued attorney Friedberg.  Ingraham alleged (1) the two had entered into a joint venture concerning the client engagement and Friedberg breached his fiduciary duty as a coventurer warranting the imposition of punitive damages; (2) Friedberg tortiously and maliciously induced the client to breach the contingency fee agreement between client and Ingraham; and (3) Ingraham was entitled to $43,000 as the reasonable value of services he rendered in the malpractice case.  (*Ibid.*)  Friedberg's nonsuit motion was granted as to the tort theories, and the jury then awarded Ingraham $12,900 as the reasonable value of legal services rendered.  (*Id.* at pp. 383-384.)  Friedberg then sued Ingraham for malicious prosecution, alleging the joint venture and tortious interference theories in the underlying case were without probable cause and asserted with malice.  (*Id.* at p. 384.)  The appellate court held that Ingraham's summary judgment motion was properly granted, concluding that the underlying action did not terminate in Friedberg's favor because the three theories addressed one breach of a primary right, and Ingraham was successful on one such theory. (*Id.* at pp. 388-389.)

*Friedberg*, *supra*, 197 Cal.App.3d 381 and other similar authorities[7] do not support Attorneys' position that favorable termination requires that the malicious prosecution

---

[7] Courts in other cases have similarly held that there is no favorable termination where the prior-suit defendant received a favorable resolution on some, but not all, causes of action.  In *StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1395

continued

.                                                          19

plaintiff show that all claims in the underlying action were unsuccessful *and that each of them* was resolved on the merits.  Here, unlike *Friedberg* and similar cases citing that case (see, e.g., *Lane v. Bell* (2018) 20 Cal.App.5th 61; *StaffPro, supra*, 136 Cal.App.4th 1392), *no portion of the underlying probate proceeding* was resolved in favor of the claimant, McLaughlin.

We hold that where the prior-suit defendant prevailed unequivocally on all claims in the lawsuit and at least one claim was disposed of substantively in the defendant's favor, there has been a "termination [that] reflect[s] on the merits of the underlying action" (*Lackner*, *supra*, 25 Cal.3d at p. 750, italics omitted) supporting a malicious prosecution action.  Under such circumstances, the termination "reflect[s] on the defendant's innocence."  (*Ibid.*)  We perceive of no reasoned basis for concluding otherwise.  The mere

(*StaffPro*)—relied upon by Attorneys—the plaintiff in the underlying case alleged three claims.  One claim was dismissed by the plaintiff before trial, a second claim was disposed of against the plaintiff by motion for judgment, and the plaintiff prevailed on the third claim at trial, obtaining injunctive relief from the court.  (*Id.* at p. 1396.)  The defendant in the prior suit then filed a malicious prosecution action alleging that two of the claims were maintained without probable cause and with malice.  (*Id.* at p. 1397.)  The *StaffPro* court held that the malicious prosecution claim was not maintainable; there had been no favorable termination because the prior-suit plaintiff had obtained injunctive relief on the third claim.  (*Id.* at pp. 1400-1402.)  In *Dalany v. American Pacific Holding Corporation* (1996) 42 Cal.App.4th 822, (*Dalany*), the defendant in the underlying action filed a cross-complaint asserting various claims; some of those claims were disposed of against defendant/cross-complainant by summary adjudication, and the remainder of the action was later settled.  (*Id.* at pp. 825, 826.)  The plaintiff and cross-defendant in the underlying action then filed a malicious prosecution suit asserting that the cross-complaint had been brought without probable cause and with malice.  (*Id.* at p. 826.)  The appellate court held the cross-complaint was concluded as a result of a negotiated settlement (*id.* at p. 828), and that the cross-complaint did not terminate on the merits in favor of the prior-suit plaintiff/cross-defendant (*id.* at p. 829).  The *Dalany* court reasoned that the fact that the prior-suit cross-defendant (malicious prosecution plaintiff) achieved partial success " ' "does not alter the rule that there must first be favorable termination of the *entire* action." [Citation.]' [Citation.]" (*Id.* at pp. 829-830, quoting *Crowley*, *supra*, 8 Cal.4th at p. 686, original italics.)

.                                           20

fact that an entirely unsuccessful claimant (here, McLaughlin, through her Attorneys) joins claims that are disposed of for "technical or procedural" reasons (*id.* at p. 751) with claims that are disposed of on substantive grounds should not preclude a favorable termination finding. "As a general rule, the termination of underlying civil proceedings, in order to constitute a favorable termination for the purposes of a malicious prosecution action, *must be consistent with a finding for the defendant on substantive grounds, and must not be based solely upon technical or procedural considerations*." (52 Am.Jur. 2d (1995) Malicious Prosecution § 40, italics added.)

*Lanz v. Goldstone* (2015) 243 Cal.App.4th 441 (*Lanz*) supports our conclusion. There, an attorney (Lanz), sued his former client, Garcia-Bolio, for attorney fees incurred in a prior *Marvin* (*Marvin v. Marvin* (1976) 18 Cal.3d 660) suit. (*Lanz, supra*, at p. 446.) Goldstone, an attorney, represented Garcia-Bolio and filed a cross-complaint on her behalf alleging three causes of action (breach of fiduciary duty, declaratory relief, and professional negligence. (*Id.* at pp. 446, 450, 452.) While the action was pending, Garcia-Bolio filed for bankruptcy protection, which stayed the litigation. (*Id.* at p. 453.) Garcia-Bolio did not list her breach of fiduciary duty/professional negligence claims against Lanz in the bankruptcy schedule disclosing her actual or potential assets. (*Ibid.*) After the bankruptcy stay was lifted, Lanz prevailed on the cross-complaint by a motion for judgment on the pleadings (breach of fiduciary duty and professional negligence), and by a motion for summary adjudication (declaratory relief). (*Ibid.*) Lanz then sued Goldstone for malicious prosecution, to which the latter responded with an answer and a special motion to strike under section 425.16. (*Lanz, supra*, at p. 456.) The trial court denied the special motion to strike. (*Ibid.*)

On appeal, Goldstone asserted that Lanz could not show a probability of prevailing because he could not establish any of the malicious prosecution elements. (*Lanz, supra*, 243 Cal.App.4th at p. 459.) Goldstone argued, inter alia, that Lanz could not establish favorable termination of the underlying action because two of the three causes of action of the cross-

complaint (i.e., the tort claims) were dismissed because Garcia-Bolio, by virtue of failing to list them in her bankruptcy schedule, " 'was *procedurally* barred from pursuing those claims in the Superior Court.' " (*Ibid.*, original italics.) The appellate court rejected the argument, stating: "To begin with, we fail to see the significance of the argument, as the third claim [for declaratory relief] in the cross-complaint was resolved on the merits, as Goldstone essentially concedes. This ends the inquiry, as expressly held by numerous cases, including *Bertero*[, *supra*, 13 Cal.3d 43], where the court held that where several claims are advanced in the underlying action, each must be based on probable cause." (*Ibid.*)

The appellate court in *Lanz, supra*, 243 Cal.App.4th at pages 461 to 462, however, proceeded to hold that the disposition of the two tort claims under the circumstances *could be* deemed ultimately by the trier of fact to have been a favorable termination on the merits. Therefore, *Lanz*'s holding that one claim that was unquestionably disposed of on the merits would support a favorable termination finding, even if other claims were disposed of on procedural grounds (i.e., not on the merits), appears to be dictum. (*Stockton Theatres, Inc. v. Palermo* (1956) 47 Cal.2d 469, 474 [obiter dictum need not be followed by appellate courts].)

We nonetheless agree with the conclusion by the *Lanz* court. In doing so, however, we note a slight difference in our view of the significance of *Bertero*, *supra*, 13 Cal.3d 43 than that expressed in *Lanz*. The Supreme Court in *Bertero* held that malicious prosecution lies where one theory in the underlying case was pursued without probable cause, even if there was probable cause to pursue other theories. (*Bertero*, *supra*, at pp. 55-57.) *Bertero* thus does not provide direct support for the proposition that favorable termination exists where the underlying action containing multiple claims resolved uniformly against the claimant and at least one of the claims was a disposition on the merits. (See *Crowley*, *supra*, 8 Cal.4th at p. 686 [probable cause and favorable termination are separate elements and require distinct analyses].) But the principle derived from *Bertero* that a plaintiff need not pursue a malicious prosecution claim as to each cause of action in the underlying case in

.                                                           22

which he or she prevailed (see *Franklin Mint*, *supra*, 184 Cal.App.4th at p. 333) applies with equal force to the favorable termination element.  It would make no sense to bar a malicious prosecution suit where the party was previously sued, prevailed completely in defending multiple claims, and achieved a substantive victory on one or more of those claims.  A party who files a multiple-claim suit, suffers a complete loss, and loses on the merits on at least one claim—where that claim was brought without probable cause and with malice—should not escape liability because of the fortuity that other claims were resolved on procedural or technical grounds.

### *(2)    Prima Facie Showing of Favorable Termination on the Merits*

Carol had the burden of establishing that her malicious prosecution claim had "at least 'minimal merit' " (*Park*, *supra*, 2 Cal.5th at p. 1061), and she was required to " 'demonstrate that the complaint [was] both legally sufficient and [was] supported by a sufficient prima facie showing of facts to sustain a favorable judgment if [her] evidence . . . [were] credited.' [Citations.]" (*Wilson*, 28 Cal.4th at p. 821.)  Attorneys, in challenging the legal sufficiency of Carol's complaint, argue at length that the complaint fails to allege the favorable termination element required for malicious prosecution.  They assert, inter alia, that the allegation in the complaint that " 'Maleti obtained a favorable and final termination on the merits of all claims alleged against him in the Farkas Probate Proceeding' . . . is demonstrably false." (Italics omitted.)  Carol does not respond to this challenge to the complaint's legal sufficiency.

We disagree with Attorneys' contention that the complaint was legally insufficient because it contained inadequate or incorrect allegations concerning the favorable termination element.  The one paragraph of the complaint (paragraph 41, quoted in the preceding paragraph herein) must be considered in the context of the entire pleading.  In the preliminary allegations of the complaint, Carol detailed the procedural history of the underlying probate proceeding, including the allegations of the Fourth and Fifth Amended

Petitions, the demurrers to those pleadings and the demurrer orders, and the summary judgment motion and order. Specifically, Carol alleged, inter alia, that the Maleti Respondents' demurrer to all causes of action of the Fourth Amended Petition was sustained with leave to amend; McLaughlin's Fifth Amended Petition no longer named the Maleti Respondents in the first five causes of action of the Easement Claims; and their demurrer to the sixth cause of action for easement by estoppel was sustained by the court without leave to amend. These allegations were incorporated by reference into the malicious prosecution cause of action and supplemented paragraph 41 alleging favorable and final termination on the merits of the underlying proceeding. (See *Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 893-894 [noting that on demurrer, the plaintiff's allegations were bolstered by general factual allegations incorporated by reference].) Recognizing that a "plaintiff [opposing an anti-SLAPP motion] need[] show only a 'minimum level of legal sufficiency and triability' [citation]" (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989), we conclude that Carol demonstrated that the complaint was legally sufficient in alleging favorable termination.[8]

We turn next to whether Carol made an evidentiary showing that she prevailed in the prior action *and* there was a substantive termination of the case in her favor. To reiterate, in

---

[8] We conclude, *post*, that the disposition of the eighth through tenth causes of action of the Fifth Amended Petition, while favorable to the Maleti Respondents, did not reflect the merits. We observe therefore that Carol has not established, as alleged in her complaint, that the "Maleti obtained a favorable and final termination on the merits of *all* claims alleged against him in the Farkas Probate Proceeding." (Italics added.) We conclude, however, that she has established that *some* of the claims were terminated in favor of the Maleti Respondents on the merits. Since Carol has thus satisfied the favorable termination element, and particularly given the unusual procedural circumstances presented here, we believe it would be improper to conclude that she did not satisfy her burden in opposing the anti-SLAPP motion due to imprecise wording in her complaint. (See *Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 530 [expressing inclination "to allow the plaintiff in a SLAPP motion a certain degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the motion is brought and heard . . . and the limited opportunity to conduct discovery' "].)

.                                                        24

"determin[ing] 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action.' " (*Casa Herrera, supra*, 32 Cal.4th at p. 341.) And as discussed, *ante*, where, as here, the current plaintiff prevailed in the underlying action on multiple causes of action, we look to whether the disposition was on the merits as to at least one of those claims.

There were nine claims asserted by McLaughlin against the Maleti Respondents in the Farkas probate proceeding. We will consider the disposition of those claims in three separate categories: (a) the eighth through tenth causes of action of the Fifth Amended Petition; (b) the first through fifth causes of action of the Fourth Amended Petition; and (c) the sixth cause of action of the Fifth Amended Petition.

### (a) 8th–10th Causes of Action

In granting summary judgment in favor of the Maleti Respondents, the probate court found that the eighth and ninth causes of action for negligence and for slander of title, respectively, were barred by the applicable statute of limitations (see § 338). No other ground for granting summary judgment of these claims was stated by the court in its October 11, 2018 order.[9] Thus, the termination of the eighth and ninth causes of action in the underlying case is "deemed a technical or procedural as distinguished from a substantive termination" and was not a termination on the merits. (*Lackner, supra*, 25 Cal.3d at p. 751.)

The probate court also granted summary judgment in favor of the Maleti Respondents on the tenth cause of action to pierce the corporate veil, concluding that it was a theory of vicarious liability, not a freestanding claim, and because no substantive claims

---

[9] The record suggests that there may have been substantive grounds argued in support of the summary judgment motion. It was alleged in the complaint that the motion for summary judgment was based in part upon substantive grounds. Nonetheless, the probate court did not rule in the Maleti Respondents' favor on substantive grounds as to the eighth and ninth causes of action.

.                                                                25

remained against them. Carol makes the conclusory argument, unsupported by authority, that this was a favorable termination on the merits. We may "treat the issue as abandoned." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

In any event, the court's ruling concerning the alter ego claim does not appear to have been a substantive determination. The court did not consider the merits of whether Maleti Corp. was, in fact, the alter ego of Maleti. Instead, the probate court reasoned that the alter ego theory could not survive because the Maleti Respondents had no potential liability under the remaining claims asserted by McLaughlin. This decision appears "technical or procedural," not "substantive," and thus does not reflect the merits. (*Lackner*, *supra*, 25 Cal.3d at p. 751.)

*Robbins v. Blecher* (1997) 52 Cal.App.4th 886 supports this conclusion. There, the malicious prosecution defendants had prevailed against a corporation, and while that case was on appeal, they filed a separate action against Robbins alleging that he was the corporation's alter ego. (*Id.* at p. 890.) After the judgment in favor of the corporation was reversed on appeal and the decision became final, the defendants voluntarily dismissed their alter ego action. (*Id.* at pp. 890-891.) Robbins filed a malicious prosecution suit based upon the dismissal of the alter ego action. (*Id.* at p. 891) The trial court sustained without leave to amend a demurrer to Robbins's complaint because there had been no favorable termination of the underlying alter ego action. (*Ibid.*) The Court of Appeal affirmed, reasoning, "As an entity which was no longer a judgment creditor of [the corporation], [the malicious prosecution defendants] had simply lost standing to pursue [the corporation's] alter egos. [The] voluntary dismissal was not a concession that [the corporation] and Robbins had done nothing wrong, but merely a concession that [the defendants were] no longer in a position to complain of their wrongdoing. This concession does not reflect on the merits of the alter ego action, but only on its mootness." (*Id.* at p. 894, fn. omitted.)

## **(b)** **1st-5th Causes of Action**

We next address the first through fifth causes of action of the Fourth Amended Petition—i.e., five of the six Easement Claims alleged against the Maleti Respondents in that pleading. The probate court sustained with leave to amend the Maleti Respondents' demurrer to those claims. When McLaughlin, through her Attorneys, filed the Fifth Amended Petition, she elected not to reallege those five claims against the Maleti Respondents. "When the proceeding terminates other than on the merits, the court must examine the reasons for termination to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1149; see also *Eells*, *supra*, 36 Cal.App.4th at p. 1855 ["[t]he reasons for the dismissal of the action must be examined to determine whether the termination reflected on the merits"].) Therefore, here, the circumstances involving the procedural history of the first through fifth causes of action must be examined to determine whether there was a favorable termination.

McLaughlin alleged in the Fourth Amended Petition that the Farkas Estate, owning Parcels 18 and 5, held easement rights over a dirt road located on Parcel 19 and Parcel 21 connecting to Tradewinds Drive (i.e., the Tradewinds Route). She alleged that Parcel 19 and Parcel 21 were owned by Wilson/Patrick and the Kings, respectively. McLaughlin alleged further that Parcels 18, 19, and 21 had been "previously owned by [the Maleti Respondents]." In the first through fifth causes of action, McLaughlin sought to enforce these rights through claims of easement (1) by prescription, (2) by implication, (3) through implied conveyance, (4) by express grant, and (5) by necessity.

In their demurrer filed in July 2017, the Maleti Respondents challenged the first through fifth causes of action on both technical and substantive grounds. They asserted that the claims were barred by the applicable statute of limitations and by laches. The Maleti Respondents also argued that each of the five claims failed to state facts sufficient to constitute a cause of action because (1) the Maleti Respondents "own no vested interest in

.                                                                       27

any of the property at issue," citing section 762.010 and Civil Code section 804; (2) Maleti, individually, never owned any interest in the properties at issue in the proceeding; and (3) the Maleti Respondents "are not legally authorized defendants under Probate Code section 850, as they presently have no interest in the property at issue." In her opposition to the demurrer, McLaughlin presented argument, inter alia, in response to the assertions that the claims were barred by the applicable statute of limitations and by laches. Significantly, however, McLaughlin *presented no argument* in response to the Maleti Respondents' position that the five easement claims were not viable because they presently held no interest in any of the property at issue and because Maleti, individually, never held any interest in such property.

In September 2017, the court sustained *with* leave to amend the demurrer to the six Easement Claims alleged in the Fourth Amended Petition.[10] It is apparent that the basis for the ruling was McLaughlin's failure to allege that the Maleti Respondents had a *present interest* in the property at issue. The court granted leave to amend "to allow Petitioner to allege, that the Maleti Respondents *are* claiming an interest to, *have* title to or *are* in possession of the property." (Italics added.)

McLaughlin filed a Fifth Amended Petition. Although she alleged the same six Easement Claims that had been previously asserted, McLaughlin omitted the Maleti Respondents from the first five causes of action. Attorneys contend here that "[a]lthough [they] chose not to include Sal Maleti in the other easement theories [in the Fifth Amended Petition], this was not a 'dismissal on the merits' for purposes of 'a favorable termination' of the entire action . . . since the remaining causes of action were based on the same requested relief: an easement." We need not consider this argument as it is unsupported by any legal authority. (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.)

---

[10] The sixth cause of action (easement by estoppel) is discussed separately, *post*.

" '[W]hen a plaintiff is given the opportunity to amend his [or her] complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he [or she] can.' [Citations.]" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 (*Reynolds*), overruled on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35, 66.)  As the high court stated more emphatically many years ago, an election not to amend after a demurrer to a complaint is sustained with leave to amend results in the plaintiff " 'practically confess[ing] that he [or she] has alleged in [the] pleading every fact [the plaintiff] is prepared to prove in support of [the plaintiff's] action.' " (*Goldtree v. Spreckels* (1902) 135 Cal. 666, 672.)

When McLaughlin (through her Attorneys) failed to amend her petition as to the first through fifth causes of action, she admitted that she had " 'stated as strong a case as [she could' " against the Maleti Respondents.  (*Reynolds*, *supra*, 36 Cal.4th at p. 1091.)  And her failure to amend after the court granted her leave supports the conclusion that she could not cure the defect identified by the court in its order, namely, the failure to allege "that the Maleti Respondents [were currently] claiming an interest [to], . . . title to or [were currently] in possession of the property."  The disposition of the first five Easement Claims through their abandonment by McLaughlin and Attorneys may "reflect[] the opinion of . . . the prosecuting party that the action would not succeed."  (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1149.)

At oral argument in this appeal, counsel for Attorneys asserted that the decision not to amend the Fifth Amended Petition to include the Maleti Respondents was simply a strategic decision to narrow the focus of the case, and it could not be viewed as a termination on the merits.  Counsel argued further that under no circumstances should a plaintiff's decision to dismiss voluntarily a claim after the court sustains a demurrer to it with leave to amend constitute a favorable termination on the merits.  We disagree.  A voluntary dismissal may support a favorable termination finding, although "[t]he reasons for the dismissal of the action must be examined to determine whether the termination reflected

.                                                          29

on the merits.  [Citations.]"  (*Eells*, *supra*, 36 Cal.App.4th at p. 1855.)  And here, although there was no formal voluntary dismissal of the first through fifth causes of action, Attorneys' election not to amend after the court sustained the demurrer to the Fourth Amended Petition with leave to amend effectively resulted in an abandonment of those claims, removing them from the proceedings (as to the Maleti Respondents).  We conclude that a plaintiff's decision not to amend a pleading to reallege one or more causes of action after a demurrer to those claims is sustained on substantive grounds with leave to amend may, upon a proper showing, constitute a favorable termination on the merits of those abandoned claims.

Viewing the circumstances as a whole, Carol made a prima facie showing that the disposition of the first through fifth causes of action in the Maleti Respondents' favor "*reflect*[*ed*] on the merits."  (*Lackner*, *supra*, 25 Cal.3d at p 750.)[11]

### (c)    6th Cause of Action

McLaughlin alleged in the Fourth Amended Petition, as a sixth cause of action against all respondents, that the Farkas Estate was entitled to an easement by estoppel over the Tradewinds Route burdening Parcels 19 and 21 that should be enforced by a court of equity.  The probate court sustained the Maleti Respondents' demurrer to that claim, granting McLaughlin leave to amend "to allege, that the Maleti Respondents are claiming an interest to, have title to or are in possession of the property."

---

[11] In their opening brief, Attorneys rely on *Cuevas-Martinez v. Sun Salt Sand, Inc.* (2019) 35 Cal.App.5th 1109 (*Cuevas-Martinez*).  There, the court held that a plaintiff could properly assert a malicious prosecution claim that would survive an anti-SLAPP motion if he or she could show that a multiple-theory claim in the underlying action was not supported by probable cause as to at least one of those theories.  (*Id.* at p. 1118, citing *Crowley*, *supra*, 8 Cal.4th at p. 683, fn. 11.)  *Cuevas-Martinez* does not support Attorneys' position that their failure to amend the first through fifth causes of action did not constitute a termination on the merits.

.                                                        30

The Fifth Amended Petition contained revisions and additions to its preliminary allegations, including some pertaining to the Maleti Respondents. There were no new allegations, however, to the effect that the Maleti Respondents' *currently* claimed an interest in, title to, or possession of the property. The only new allegation in the sixth cause of action pertaining to the prior order on demurrer is the italicized portion of the following sentence: "Farkas is entitled to the Tradewinds Route easement by estoppel because MALETI, *who owned, and had interest in, title to and possession of KING APN 21 at the time Farkas purchased FARKAS APN 18,* and Farkas entered into an agreement which should be enforced in equity in favor of both FARKAS APN 18 and FARKAS APN 05." (Italics added.)

The Maleti Respondents demurred, inter alia, to the easement by estoppel claim alleged in the Fifth Amended Petition.[12] The court sustained the demurrer to the sixth cause of action without leave to amend.

Carol argues that this ruling after demurrer constituted a favorable termination on the merits as to the easement by estoppel claim because McLaughlin "could not allege that [Maleti] had an ownership interest in the land over which she sought an easement." Attorneys do not address this issue.

The probate court had previously sustained the demurrer to the easement by estoppel claim in the Fourth Amended Petition with leave to amend "to allege, that the Maleti Respondents *are claiming* an interest to, *have* title to or *are* in possession of the property." (Italics added.) Plainly, the court had agreed with the Maleti Respondents' position that the sixth cause of action was defective because Attorneys had not alleged that the Maleti

---

[12] Although this demurrer was not included in record, Carol alleged in the complaint that it was based, inter alia, upon McLaughlin's failure to "allege that the Maleti Respondents claimed an interest in, have title to or possession of any of the property at issue."

Respondents currently owned a vested interest in the property as required by section 762.010, Civil Code section 804, and Probate Code section 850. McLaughlin, through her Easement Claims, was claiming an adverse interest in the property of another and was thus required to "name as defendants in the action the persons *having* adverse claims to the title of the plaintiff against which a determination is sought." (§ 762.010, italics added.) In her Fifth Amended Petition, McLaughlin did not address the defect identified in the prior order—and thus did not present a cognizable claim under section 762.010—instead, adding an allegation that the Maleti Respondents "*owned,* and *had* interest in, title to and possession of" Parcel 21 when Farkas purchased Parcel 18 in August 1992. (Italics added.)

In summary, (1) the probate court sustained a demurrer to the easement by estoppel claim in the Fourth Amended Petition for the substantive reason that there was no allegation that the Maleti Respondents held a current interest in the subject property; (2) despite being granted leave to amend, Attorneys failed to cure that defect; and (3) the probate court, recognizing Attorneys' inability to allege facts that were necessary to assert a viable claim, sustained the general demurrer of the Maleti Respondents to the sixth cause of action of the Fifth Amended Petition without leave to amend. These circumstances "reflect[] the opinion of the court or the prosecuting party that the action would not succeed." (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1149.) Thus, Carol made a prima facie showing that the order constituted a termination on the merits as to the sixth cause of action. (Cf. *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 384 [holding that, in the context of applying the res judicata doctrine, "a judgment following the sustaining of a general demurrer may be on the merits"].)

### (d) Conclusion (Favorable Termination)

We conclude that Carol satisfied her burden in opposing the anti-SLAPP motion, as to the element of favorable termination of the underlying proceeding required for malicious prosecution, of presenting a legally sufficient complaint and making a prima facie showing of facts supporting that element. (*Wilson*, 28 Cal.4th at p. 821.) The disposition of the

32

.

eighth through tenth causes of action in the probate proceeding was procedural or technical and thus did not reflect the merits. But there was a prima facie showing that the dispositions of (a) the first through fifth causes of action by demurrer sustained with leave to amend (with McLaughlin electing not to amend), and (b) the sixth cause of action by demurrer sustained without leave to amend, were in the Maleti Respondents' favor *and* "*reflect*[*ed*] on the merits." (*Lackner*, *supra*, 25 Cal.3d at p 750.) While Attorneys may challenge this conclusion as the malicious prosecution case proceeds on remand, Carol's showing was sufficient to defeat the special motion to strike. (See *Ross v. Kish* (2006) 145 Cal.App.4th 188, 198 [if there is a conflict "as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact"].)

### 3. Absence of Probable Cause

#### a. Applicable Law

"[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*).) The court determines if a claim is tenable by inquiring "whether any reasonable attorney would have thought the claim tenable." (*Id.* at p. 886.) Thus, as the high court later explained, "probable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable. [Citation.]" (*Wilson*, *supra*, 28 Cal.4th at p. 824, original italics.) " 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 292.)

Because the probable cause determination is based upon an objective standard, the nature, extent, and adequacy of an attorney's research—while germane to the separate issue

.                                                                33

of malice—is not relevant to probable cause. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 883.) And because " 'experts may not give opinions on matters which are essentially within the province of the court to decide' citations]," expert testimony concerning probable cause is improper. (*Id.* at p. 884.) If the court finds the existence of probable cause, "the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated." (*Id.* at p. 885.)

Probable cause is a question of law decided by the court. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 875.) Where the facts are undisputed, the court decides the issue without any submission to the jury. (*Ibid.*) But if the evidence is conflicting, the jury decides the preliminary factual questions on which the probable cause determination is made by the court. (*Ibid.*)

As discussed, *ante*, under the *Bertero* rule, a malicious prosecution plaintiff must show that the defendant lacked probable cause in the assertion of at least one theory in the prior suit, even if such defendant *had* probable cause in asserting other theories in that case. (*Bertero*, *supra*, 13 Cal.3d at p. 50.) Additionally, probable cause (or its absence) must be viewed at more than one moment in the life of the prior litigation. Even if the malicious prosecution defendant had probable cause to *initiate* the suit under a particular theory, his or her decision to continue to prosecute the case on that theory after learning it was not supported by probable cause may result in liability for malicious prosecution. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 971.)

### b. Prima Facie Showing of Absence of Probable Cause

Attorneys contend that they had probable cause to join the Maleti Respondents in the probate proceeding when they filed the Fourth Amended Petition. Citing a lengthy joint declaration of Rodney Wickers and Christina Wickers in support of the anti-SLAPP motion, they contend that they only added the Maleti Respondents to the proceeding "[a]fter conducting extensive discovery, consulting with experts, and taking Maleti's deposition," from which Attorneys determined "that Maleti had promised Farkas an easement to access

the Properties, and it was Maleti, the original grantor, who created the ambiguity in the Farkas Deed." Carol responds that none of the claims was supported by probable cause because, inter alia, (1) as to the Easement Claims, Maleti had no ownership interest in the subject properties at the time he and his corporation were named as respondents; (2) as to the negligence claim, Maleti owed no duty to Farkas, who chose to be unrepresented in the transaction in which he purchased Parcel 18; and (3) as to the slander of title claim, all of Maleti's statements in the 1999 fax to the title company concerning Farkas's access to Parcel 18 and any easements were true.

"The tort of malicious prosecution does not have to be directed to an entire lawsuit or even to an entire cause of action. [Citations.]" (*Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, 153.) As we have concluded, Carol made a prima facie showing that *some*, but not all, of the claims asserted against the Maleti Respondents terminated in their favor on the merits. Since the eighth, ninth, and tenth causes of action were terminated for procedural or technical reasons, our focus on the probable cause element (as well as the element of malice addressed, *post*) is on the six Easement Claims for which Carol made a prima facie showing of termination on the merits. (Cf. *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522 (*Padres L.P.*) [because malicious prosecution plaintiff opposing anti-SLAPP motion failed to show that two underlying lawsuits lacked probable cause, appellate court would address malice element only as to third lawsuit for which there was no probable cause].)

The complaint contains the allegation that when the Fourth and Fifth Amended Petitions were filed, "no reasonable attorney would have thought that the claims alleged against Sal Maleti in those pleadings were legally tenable." Carol alleged specifically that no probable cause existed because, inter alia, "[t]here was no factual or legal basis for prosecution of the [Easement Claims] . . . because Sal Maleti never owned any interest in Parcels 18, 19 or 21, and Maleti Corp. divested itself of any interest in those properties by April 2000." We conclude that Carol satisfied her burden of showing that the complaint, as

. 35

it concerned the absence of probable cause element, was " 'legally sufficient.' " (*Wilson*, 28 Cal.4th at p. 821.)[13]

California's Quiet Title Act (§ 760.010 et seq.) "creates a special procedural mechanism for seeking and obtaining in rem judgments resolving adverse claims to property that would be binding even to nonparties and hence be 'good against all the world.' [Citations.]" (*Tsasu LLC v. U.S. Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 715.) One element of a quiet title claim "is '[t]he adverse claims to the title of the plaintiff against which a determination is sought.' [Citation.]" (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 802 (*West*), quoting § 761.020, subd. (c).) Thus, in an action brought under the statute, the plaintiff seeking to quiet title to real or personal property "shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought." (§ 762.010; see also Civ. Code, § 804 ["[a] servitude can be created only by one who has a vested estate in the servient tenement"].)

In *West*, *supra*, 214 Cal.App.4th at page 786, after her property was lost through foreclosure, the borrower/former owner West sued, among others, the foreclosing bank that was the successor to the original lender. She alleged numerous causes of action, including an action to quiet title. (*Ibid.*) The bank argued that the quiet title claim was defective because, having foreclosed on the security in a sale in which it was not the grantee, the bank no longer held an interest in the subject property. (*Id.* at pp. 802-803.) The appellate court agreed. It held that West had not alleged and proved the statutory element under section 761.020, subdivision (c) concerning "[t]he adverse claims to the title of the plaintiff against which a determination is sought," "because none of the defendants to the third amended complaint has adverse claims to title." (*West*, *supra*, at p. 802; see also *Orcilla v.*

[13] Attorneys do not argue on appeal—nor did they do so below—that the complaint's allegations regarding the absence of probable cause were deficient.

*Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1010 (*Orcilla*) [borrowers' concession that " 'the Bank Defendants have no Adverse claims to title' . . . dooms their quiet title claim against [those] Defendants"].)

During the pendency of the Farkas proceeding, neither Maleti nor Maleti Corp. had any interest in any of the property at issue (Parcels 18, 19, and 21). McLaughlin acknowledged in the Fourth Amended and Fifth Amended Petitions that the Maleti Respondents had "*previously owned*" those parcels, and they had conveyed them to others. (Italics added.) Also, significantly, in the last paragraph of both petitions, under the heading "**PERSONS WITH INTEREST**," McLaughlin identified 16 parties as being "all persons known by petitioner to claim an interest in the property, all persons having an interest in decedent's estate who could be affected by a determination of ownership of the property, including the heirs and devisees . . ."; neither Maleti nor Maleti Corp. was included among those 16 parties.

Further, Attorneys were aware no later than January 20, 2017—more than three months before the Fourth Amended Petition was filed—that the Maleti Respondents held no interest in any of the relevant properties. On that date, Attorneys deposed Maleti, and he testified that he had previously owned Parcels 18, 19, 21, and 22, acquiring them in the 1980's; he had thereafter transferred each parcel; and that he no longer owned any of the parcels.

Maleti Respondents, therefore, were plainly not "persons having adverse claims to the title of the plaintiff." (§ 762.010.) The six Easement Claims under which McLaughlin, through Attorneys, sought to adjudicate the Farkas Estate's easement rights over Parcels 19 and 21 to access the Tradewinds Route, and thereby adjudicating rights affecting the owners of those servient tenements, were plainly claims governed by the California's Quiet Title Act (§ 760.010 et seq.). Those claims were not maintainable against the former owner, the Maleti Respondents, who had no present claim to, or interest in the relevant property. (*Orcilla*, *supra*, 244 Cal.App.4th at p. 1010; *West*, *supra*, 214 Cal.App.4th at p. 802.)

.                                                    37

As alleged in the Fourth and Fifth Amended Petitions, McLaughlin, through her Attorneys, brought the proceeding that included the Easement Claims pursuant to the authority of Probate Code section 850, subdivision (a)(2)(D). Under that statute, "[t]he personal representative or any interested person [may file a petition seeking an order] . . . [¶] . . . [¶] [w]here the decedent died having a claim to real or personal property, title to or possession of which *is held by another*." (Prob. Code, § 850, subd. (a)(2)(D), italics added.) Here, during the pendency of the underlying proceeding, none of the subject real property to which the Farkas Estate was asserting a claim of title or possession was being *presently* "held by" the Maleti Respondents. (*Ibid.*) The Easement Claims against the Maleti Respondents were thus not authorized under Probate Code section 850, subdivision (a)(2)(D).

Attorneys do not in their appellate briefs—nor did they in their memoranda filed below in support of their anti-SLAPP motion[14]—address the issue of probable cause for the initiation and prosecution of the six Easement Claims against the Maleti Respondents. And the joint declaration of Rodney Wickers and Christina Wickers, referred to in Attorneys' opening brief, does not provide any factual or legal support for asserting the Easement Claims against the Maleti Respondents.[15]

---

[14] Attorneys' initial memorandum in support of their special motion to strike stated conclusorily that there was probable cause and an absence of malicious intent in naming Maleti and Maleti Corp. as respondents, "because there is ample evidence that there were reasonable grounds for bringing claims against him." They also asserted, without citation of authority, that the probate court's having partially overruled the demurrers to the petitions demonstrated that Attorneys "had stated valid claims against Maleti as a matter of law." The reply memorandum contained one paragraph on the issue of probable cause. Neither the initial memorandum nor the reply addressed the legal basis upon which the Maleti Respondents were joined as parties in the six Easement Claims alleged in the Fourth Amended Petition or in the sixth cause of action alleged in the Fifth Amended Petition.

[15] Attorneys also argue (without citation to authority) that it was not required that they "*prevail* on their claims to have probable cause to bring their action against Maleti.

continued

We conclude that Carol made a prima facie showing that the six Easement Claims asserted against the Maleti Respondents in the underlying probate proceeding were not objectively tenable and thus not supported by probable cause.

### 4. *Malice*

#### a. Applicable Law

"The malice element of the malicious prosecution tort goes to the defendant's subjective intent in initiating the prior action. [Citations.]" (*Sierra Club*, *supra*, 72 Cal.App.4th at pp. 1156-1157.) As such, malice—being "the defendant's motivation" (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 874)—is a question of fact within the province of the jury. The requisite showing of malice "is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose. [Citations.]" (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383.) "Malice 'may range anywhere from open hostility to indifference. [Citations.]' " (*Soukup*, *supra*, 39 Cal.4th at p. 292.) Malice may be found "where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 (*HMS Capital*).) And "[s]ince parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence. [Citation.]" (*Ibid.*)

In evaluating the element of malice, its distinction from, and relationship to, the element of lack of probable cause, are important. The absence of probable cause alone does not establish malice. (*Padres L.P.*, *supra*, 114 Cal.App.4th at p. 522.) However, " '[m]alice

_____

They were only required to show a sincere and good faith belief that the easement claim was genuine." (Original italics.) This is an incorrect statement of the law. While whether an attorney did or did not have a subjective good faith belief that a claim was tenable is relevant to the malice element, the presence or absence of probable cause is determined under an objective standard of whether the claim is legally tenable. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 881.)

may . . . be inferred from the facts establishing lack of probable cause.' [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 292; see also *HMS Capital*, *supra*, 118 Cal.App.4th at p. 218 [absence "of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice"].)  The attorney's subjective belief in the tenability of the claim, or the lack of such belief—while irrelevant to probable cause—is "clearly . . . relevant to the question of malice." (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 881.)  And while "[a]dditional proof of malice can consist of evidence [of] a party *knowingly* bring[ing] an action without probable cause . . . , a corollary to this rule . . . [is that] malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226, original italics (*Daniels*).)

### b. Prima Facie Showing of Malice

Attorneys contend that Carol did not establish the element of malice.  They urge there was significant evidence that they added Maleti and Maleti Corp. as respondents in the underlying probate proceeding due to a "good faith belief that they had a tenable claim against [Maleti]."  Carol responds that there was ample evidence of Attorneys' malice in the underlying proceeding.  Carol cites to such evidence (discussed, *post*) as Attorneys' inadequate investigation, their knowledge of Maleti's poor health, and their personal service late in the evening of a trial subpoena upon the ailing Maleti, who was represented by counsel.

Carol alleged in the complaint that the Defendants "acted maliciously by initiating and maintaining litigation against Sal Maleti in the Farkas Probate Proceeding in bad faith."  She alleged, inter alia, that the Defendants litigated the underling proceeding to force a settlement, and that they knew when they named Maleti and Maleti Corp. as respondents "that Maleti Corp. had not owned any interest in any of the properties at issue since April 2000 and that Sal Maleti never owned any interest in those properties, and therefore had no ability to grant the easement they sought and could not be compelled to do so."  We

.                                                     40

conclude that Carol satisfied her burden of showing that the complaint, as it concerned the element of malice, was " 'legally sufficient.' " (*Wilson*, 28 Cal.4th at p. 821.)[16]

We address initially the circumstances concerning the absence of probable cause for the Easement Claims as they relate to the element of malice. (See *Soukup*, *supra*, 39 Cal.4th at p. 292.) Before naming Maleti and Maleti Corp. as respondents, Attorneys were aware that neither held any present interest in any of the property at issue. Attorneys learned this fact no later than January 20, 2017, when they deposed Maleti. They, therefore, at least three months before filing the Fourth Amended Petition, knew (or, as legal professionals, should have known) that the Maleti Respondents could not be joined as respondents in connection with the Easement Claims because they were clearly not "persons having adverse claims to the title of the plaintiff" as required under section 762.010 of the California Quiet Title Act.

Nonetheless, Attorneys, in April 2017, named the Maleti Respondents in the Fourth Amended Petition, asserting, inter alia, the Easement Claims against them. Thereafter in July, 2017, Attorneys were notified, through the demurrer, of the flaw in charging the Maleti Respondents because they had no interest in the property at issue. Attorneys continued to assert the legal validity of the Easement Claims in opposing the demurrer; significantly, however, their opposition contained *no argument* in response to the position that the Easement Claims were untenable because neither Maleti nor Maleti Corp. held a present interest in the property at issue. The probate court acknowledged the defect by sustaining the demurrer with leave to amend so that McLaughlin could allege, if she could, "that the Maleti Respondents are claiming an interest to, have title to or are in possession of the property."

---

[16] Attorneys do not argue on appeal—nor did they do so below—that the complaint's allegations regarding malice were deficient.

When McLaughlin filed the Fifth Amended Petition containing the same six Easement Claims, she elected not to include Maleti and Maleti Corp. as respondents to the first five causes of action. As we have discussed, *ante*, the circumstances surrounding the pleading of the first five causes of action and their later abandonment by McLaughlin, through Attorneys, are a sufficient prima facie showing that the claims were terminated on the merits in the Maleti Respondents' favor because "the disposition reflect[ed] the opinion of . . . the prosecuting party that the action would not succeed." (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1149.)

As to the sixth cause of action, Attorneys—disregarding the issue the probate court identified in its prior order on demurrer—alleged in the Fifth Amended Petition that the Maleti Respondents *previously* "*owned,* and *had* interest in, title to and possession of [Parcel 21]" when Farkas purchased Parcel 18 in August 1992. (Italics added.) The Maleti Respondents' demurrer to the sixth cause of action—which again included the argument that the easement by estoppel claim was not maintainable because the Maleti Respondents did not claim a current interest in, or possession of the property—was sustained without leave to amend by the probate court.

Acknowledging that the absence of probable cause alone does not establish malice (*Padres L.P.*, *supra*, 114 Cal.App.4th at p. 522), the matters described above offer significant circumstances from which malice in this instance may be inferred. (*Soukup*, *supra*, 39 Cal.4th at p. 292.) The evidence supports inferences that (1) Attorneys knew as early as January 2017 that the Easement Claims against the Maleti Respondents were not viable; (2) they nonetheless asserted those claims three months later in April in the Fourth Amended Petition; (3) their knowledge that the claims were legally untenable was later reinforced when the Maleti Respondents filed their demurrer in July and when the court sustained that demurrer in September; and (4) Attorneys continued to assert, despite their knowledge that it was untenable, the claim for easement by estoppel in the Fifth Amended Petition. (See *Daniels*, *supra*, 182 Cal.App.4th at p. 226 ["evidence a party *knowingly*

. 42

[brought] an action without probable cause" may be "[a]dditional proof of malice," and "malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause"].)[17] The above evidence, unrebutted at this stage of the proceedings by Attorneys, supports a finding of malice.

Carol argued below that there were other facts showing malice, including Attorneys' inadequate investigation that preceded the filing of the Fourth Amended Petition. Specifically, she asserted that had Attorneys interviewed the adjacent property holders, they would have learned that both Wilson (Parcel 19) and the Kings (Parcel 21) had given permission to Farkas to use the Tradewinds Route passing over their respective properties, thereby negating McLaughlin's prescriptive easement claim. (See *Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252 [landowner's express permission defeats assertion of a prescriptive easement].) There is evidence in the record that the owners of Parcels 19 and 21 in fact gave permission to Farkas to use the Tradewinds Route. This evidence includes (1) the declaration of Kendall King in support of his motion for summary adjudication; and (2) the probate court's orders granting the separate motions of the Kings and Wilson/Patrick summarily adjudicating the prescriptive easement claim based upon evidence in each motion that use of the roadway was permissive. This was probative evidence supporting malice. (See *Sheldon Appel*, *supra*, 47 Cal.3d at p. 883 [where underlying action was not

---

[17] Our discussion of the favorable termination and absence of probable cause elements, *ante*, focused upon the six Easement Claims. Our discussion here is similarly directed at whether there was evidence of malice in Attorneys' initiation and prosecution of those six claims. This discussion should not be construed as our holding inadmissible any evidence that Attorneys acted with malice in prosecuting the other claims (e.g., whether Attorneys subjectively believed the negligence claim was legally tenable). That issue is not before us, and we therefore do not decide it. (See *Benach*, *supra*, 149 Cal.App.4th at p. 845, fn. 5 [appellate courts will not address issues whose resolution is unnecessary to the disposition of the appeal].)

legally tenable, "extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice"].)

Carol also asserted that certain treatment of Maleti by Attorneys during the probate proceedings, given Maleti's age and poor health, was evidence of malice. The evidence, consisting primarily of the declaration of his son, was that Maleti had been diagnosed in 2015 with a serious and progressive lung disease that required his reliance on the use of oxygen tanks. He was 71 years old at the time he was deposed in January 2017. After being named in the Fourth Amended Petition in April 2017, he underwent considerable emotional, physical, and financial stress relating to the litigation. His health declined dramatically in January 2018, and again in January 2019. Carol also identified in her opposition an act by Christina Wickers occurring on October 10, 2018—after the hearing on the Maleti Respondents' summary judgment motion and one day before entry of the formal order. Ms. Wickers caused Maleti to be served with a trial subpoena after 8:30 p.m. His counsel objected in an e-mail, indicating that Maleti was represented by counsel who was authorized to accept service; Maleti was in poor health, as Ms. Wickers knew; and the service of the subpoena under the circumstances was harassment. Ms. Wickers responded that Attorneys had never harassed Maleti; he "gave us no choice but to file this case"; and she had caused the trial subpoena to be served to ensure that Maleti would appear. We conclude that, given the context—including Maleti's age and poor health of which Attorneys were aware, the lengthy and costly litigation, and the apparent fact that Attorneys had recently suffered the final setback of having the remaining claims against the Maleti Respondents decided against McLaughlin[18]—the late-evening subpoena service *could be*

---

[18] It was reflected in the order granting summary judgment filed October 11, 2018 (one day after Maleti was served with a trial subpoena), that there had been a tentative ruling issued by the court on September 24 granting the Maleti Respondents' motion for

continued

construed as having been harassment and thus offering *some* support for the element of malice.

Carol raised several other matters in her opposition to the anti-SLAPP motion that she claimed supported malice.  They do not appear to support the allegation in the complaint that Attorneys acted with malice.[19]

Viewing the record as a whole, we conclude that Carol made a prima facie showing from which a trier of fact may ultimately conclude (see *Sheldon Appel*, 47 Cal.3d at p. 874) that Attorneys acted with malice in the initiation and prosecution of the underlying proceeding.

## D.     Standing to Sue

Attorneys in their opening brief—as they did in their reply memorandum below—contend that Carol did not plead that she had standing to sue for malicious prosecution on behalf of decedent Maleti.  They argue that because it was a survival action (§ 377.20, subd. (a)), Maleti's personal representative, or (if there was none) his successor in interest, could bring the suit (§ 377.30, subd. (a)), but Carol failed to sufficiently allege or provide evidence of such status.  Attorneys assert further that if Carol were bringing suit as Maleti's personal representative, she had done so without filing an affidavit or declaration as required under section 377.32, subdivision (a).  Carol responds that (1) Attorneys' belated contention

---

summary judgment, that the hearing on the motion took place on September 26, and that the court, by its order, adopted the tentative ruling in its entirety.

[19] Most of the other issues identified by Carol concerned statements and conduct by McLaughlin, which might be relevant to proving malice *by McLaughlin*; it does not appear to be relevant or probative concerning whether *Attorneys* acted with malice.  Carol also refers to a January 2018 written communication from Rodney Wickers, which she characterizes as an "attempt[] to wring a cash payment from Sal Maleti . . . in exchange for a settlement that had no relation to the merits of the claims . . . being litigated against him—indeed, there were none."  The record is inadequate here to draw the conclusion that the act of sending this communication was evidence of malice.

should be disregarded; (2) she was not required to file a declaration under section 377.32, subdivision (a) as a condition to bringing suit; and (3) she complied with the statute by filing a declaration on August 14, 2020 (i.e., one day after the hearing on the anti-SLAPP motion and approximately one month before the formal order was entered).

Attorneys' standing argument was raised below for the first time in their reply. Carol thereafter filed an objection, indicating that the trial court should not consider the argument. Carol contends here, without the requisite citation to the record (see Cal. Rules of Court, rule 8.204(a)(1)(C)), that "[t]he trial court correctly declined to consider [Attorneys'] eleventh-hour arguments." But there is nothing in the record indicating that the court explicitly sustained Carol's objection. Nonetheless, we believe Carol's objection has merit. "The general rule of motion practice . . . is that new evidence is not permitted with reply papers." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537 (*Jay*).) Strictly speaking, Attorneys' reply presented new argument rather than new evidence. But the principle explained in *Jay*—which is based upon the unfairness to the opponent of not being able to address the new matter raised in a reply (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 316)—applies here, particularly where the circumstances giving rise to the argument (i.e., an asserted pleading defect) were known to Attorneys when their anti-SLAPP motion was filed. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:106.1 ["[i]t is a serious mistake to leave key arguments for the reply brief . . . [because] [t]he court is likely to *refuse to consider new evidence or arguments first raised in reply papers*"].)

Carol alleged in the complaint that she is Maleti's widow; upon his death, she "became the executor of [his] estate . . . pursuant to the terms of his Last Will and Testament"; and she brought "the claims alleged in this complaint as the executor of the estate of Sal Maleti." A survivor action may be brought by the personal representative or successor in interest of the decedent. (§ 377.30.) Carol adequately pleaded her status as the personal representative of Maleti's estate.

Further, after Attorneys first identified an issue concerning Carol's standing, and before the filing of the formal order that is the subject of this appeal, Carol filed a declaration as executor of Maleti's estate pursuant to section 377.32, clarifying her status as plaintiff. (See *Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 614 [filing of affidavit under § 377.32 is not " 'a condition precedent to commencing or continuing the action' "].) In that declaration, Carol stated that: (1) there was no pending proceeding concerning the administration of Maleti's estate; (2) his estate was not administered; (3) she became Maleti's successor in interest under his Last Will and Testament; and (4) no other person had a superior right to commence the present action.

We reject Attorneys' contention that the anti-SLAPP motion should have been granted on the basis that Carol did not adequately plead or provide evidence of standing.[20]

### E.    Conclusion:  Malicious Prosecution

Based upon the foregoing, we conclude that Carol satisfied her burden in opposing the special motion to strike the claim for malicious prosecution. She presented a legally sufficient complaint and made a prima facie showing of facts supporting the required elements of favorable termination, absence of probable cause, and malice. (See *Wilson*, 28 Cal.4th at p. 821.) And we reject Attorneys' standing argument. We therefore conclude from our de novo review that the trial court did not err in denying the special motion to strike the malicious prosecution claim.

---

[20] Although the record is silent, we will presume that the trial court addressed Attorneys' standing argument and rejected it either because it was not timely presented or because the court concluded that Carol had adequately pleaded standing. (See *Lydig Construction, Inc. v. Martinez Steel Corp.* (2015) 234 Cal.App.4th 937, 945 [appellate court will presume that trial court "considered all the pertinent matters presented to it and ruled in favor of the prevailing party"].

.                                                    47

### F. Abuse of Process (Cross-Appeal)

The tort of abuse of process has two elements: " '[F]irst, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' " (*Spellens v. Spellens* (1957) 49 Cal.2d 210, 232.) Abuse of process is distinct from the tort of malicious prosecution. "[W]hile a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit— even for an improper purpose—is not a proper basis for an abuse of process action." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 (*Oren Royal Oaks Venture*).)

Attorneys argued below in their anti-SLAPP motion that Carol could not plead or prove her second cause of action for abuse of process. They contended the claim asserted was based upon the mere filing and prosecution of a lawsuit for an improper purpose which was insufficient to support a claim for abuse of process. Carol disagreed, stating that the "Defendants added Sal Maleti as a respondent in the midst of the underlying [probate proceeding] for an improper purpose."[21] The trial court granted Attorneys' special motion to strike the second cause of action, concluding that " '[s]imply filing or maintaining a lawsuit for an improper purpose (such as might support a malicious prosecution cause of action) is not abuse of process.' [Citation.]"

---

[21] Carol conceded below that Attorneys had satisfied the first prong in the anti-SLAPP motion of showing that the abuse of process claim arose out of protected activity.

Carol in her cross-appeal asserts that the trial court erred in striking the abuse of process claim, arguing she presented evidence that Defendants knew that their claims had no merit and were time-barred, and that Maleti was in very poor health. Carol contends that despite such knowledge, Defendants named Maleti and Maleti Corp. as respondents in the Fourth Amended Petition in an "attempt to extract shakedown settlements."

Attorneys respond that there was no error. They assert that all of the grounds in the complaint as pleaded involved Defendants' conduct of naming Maleti in the probate proceeding and asserting claims against him. As there were no allegations that the process of the court was misused in any specific manner, no abuse of process claim was stated.

In the complaint, Carol alleged that "Defendants committed willful acts against Sal Maleti in the use of the court process that were not proper in the regular conduct of the Farkas Probate Proceeding" by applying "coercion . . . to obtain a collateral advantage against him when he was not a proper party." She alleged that "Defendants improperly named Sal Maleti as a respondent in the Farkas Probate Proceeding when there was no legal or factual basis to do so." Carol alleged that the Defendants asserted the claims with knowledge that they had no merit, that Maleti was in poor health, and that they did so to "extract a cash payment from him." Carol also alleged that Defendants knew the claims against Maleti were without merit when he was named as a respondent, because Defendants knew, inter alia, that (1) Maleti never granted an easement to Farkas; (2) Maleti refused to grant an easement to Farkas over the Tradewinds Route; and (3) Farkas asked Kendall King for permission to use the access road connecting Parcel 21 with Tradewinds Drive and King granted the request. And it was alleged that Defendants knew that Farkas was aware of the existence of an issue concerning his right to use the Tradewinds Route to access his property, and they knew the negligence and slander of title claims were time-barred.

The complaint did not contain allegations supporting abuse of process. As has been explained, "Abuse of process is not just another name for malicious prosecution. Simply filing or maintaining a lawsuit for an improper purpose (such as might support a malicious

. 49

prosecution cause of action) is not abuse of process. [Citation.] [¶] Malicious prosecution and abuse of process are distinct. The former concerns a meritless lawsuit (and all the damage it inflicted). The latter concerns the misuse of the tools the law affords litigants once they are in a lawsuit (regardless of whether there was probable cause to commence that lawsuit in the first place)." (*Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 40 (*Bidna*).) Abuse of process claims include lawsuits involving improper uses of the *tools* afforded litigants, such as the improper use of discovery (see *Younger v. Solomon* (1974) 38 Cal.App.3d 289, 297-299); service of wrongful attachments (see *White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336, 348-351); obtaining a temporary restraining order to perpetuate a false representation concerning a party (see *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1579-1580); knowingly filing debt collection actions in improper venues for the purpose of impairing the debtors' ability to defend themselves (see *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 98 (*Barquis*)); and knowingly filing collection actions in the wrong states to obtain default judgments upon which improper garnishment orders may be obtained (see *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377, 1389-1391).[22]

The allegations in the second cause of action of the complaint do not support a claim for abuse of process. Rather, the allegations support the malicious prosecution claim asserted in the first cause of action—the filing and prosecution of the meritless probate proceeding. Carol does not allege an abuse of the court's process by "the misuse of the tools the law affords litigants once they are in a lawsuit." (*Bidna*, *supra*, 19 Cal.App.4th at

---

[22] Carol relies on *Barquis*, *supra*, 7 Cal.3d 94, which offers no support for her position that the complaint here contained allegations sufficient to support an abuse of process claim. In *Barquis*, the abuse of process consisted of the "practice of knowingly and [willfully] filing actions in improper counties, pursuant to statutorily inadequate complaints." (*Id.* at pp. 97-98.) No such practice by Attorneys (or other misuse of the process of the court) was alleged here.

p. 40.)  The trial court did not err in granting the motion to strike the second cause of action of the complaint.  (See *Oren Royal Oaks Venture*, *supra*, 42 Cal.3d at p. 1169.)

## G.  Request for Attorney Fees

As an additional claim of error in their appeal,[23] Attorneys challenge the trial court's denial of their request for attorney fees and costs in their special motion to strike.  The court declined to award fees and costs because Attorneys, as moving parties, obtained favorable relief on only one of two causes of action sought to be stricken, and "the relief [was] minimal compared with the goals of their motion."

Attorneys contend that since they prevailed in part in their special motion to strike, they were statutorily entitled to an award of attorney fees as to the portion of the motion on which they prevailed.  Carol responds that the trial court did not err in denying an award of fees and costs because the partial granting of the anti-SLAPP motion "accomplished nothing for [Attorneys]."

Under section 425.16, subdivision (c)(1), "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  The purpose of the statute is to "compensate[e] the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech and petition rights. [Citation.]"  (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 327-328.)  As explained by one court, "the statute reflects a clear preference for awarding fees and costs to prevailing

---

[23] Attorneys filed a notice of appeal identifying four orders they were challenging. They also filed an amended notice of appeal adding a fifth challenged order.  Besides the August 13, 2020 Order denying their motion to strike the malicious prosecution claim and the Order denying their request for attorney fees and costs, Attorneys identified three discovery orders from which an appeal was taken.  Attorneys present no argument in their appellate briefs concerning the three discovery orders.  They have thus abandoned any appeal of those orders.  (See *Tanner v. Tanner* (1997) 57 Cal.App.4th 419, 422, fn. 2 [appellate court treats as partial abandonment of appeal an appellant's failure to challenge in opening brief an order specified in notice of appeal].)

defendants. Section 425.16, subdivision (c) provides that a prevailing defendant on a SLAPP motion to strike 'shall be entitled to recover his or her attorney's fees and costs.' A prevailing plaintiff, however, can only recover fees and costs '[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay . . . .' " (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1018 (*ComputerXpress*).)

The term " 'prevailing defendant,' " as used in section 425.16, subdivision (c)(1), is not defined, and it is unstated whether a defendant who prevails on some, but not all, of the claims challenged in his or her anti-SLAPP motion is entitled to fees and costs. (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1016.) But as a general rule, a defendant who prevails in part in bringing a special motion to strike is entitled to fees and costs, subject to the trial court's determination of the appropriate amount awardable based upon the defendant's partial success. (See, e.g., *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 782-783; *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 339-340 (*Mann*); *ComputerXpress, supra*, at pp. 1019-1020.) The entitlement to fees and costs where the defendant prevails in part, however, is not absolute. As explained by the court in *Mann*, *supra*, at page 340, "a party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." The trial court's determination of whether a defendant prevailed such that he or she is entitled to fees and costs is reviewed for abuse of discretion. (*Ibid.*)

Here, Attorneys were successful in obtaining an order striking one of the two causes of action, abuse of process, alleged against them. (See, e.g., *Mann*, *supra*, 139 Cal.App.4th at p. 340 [defendants prevailed by striking one of four challenged causes of action]; *ComputerXpress*, *supra*, 93 Cal.App.4th at p. 1017 [defendants prevailed by striking five of nine challenged causes of action].) While Attorneys were not successful in achieving their intended result of dismissing the entire complaint, their success was not trivial or a pyrrhic victory. The order striking the abuse of process claim had the practical benefit to Attorneys

. 52

of narrowing the litigation, thus impacting discovery, motion practice, and trial preparation. And the order eliminated the potential imposition of liability under a tort theory distinct from malicious prosecution. (Cf. *Mann*, *supra*, at p. 340 [defendants' success in striking the trade libel claim existed, notwithstanding the fact that the similar, but distinct, defamation claim remained].) Thus, "the results of the motion were [not] so insignificant that [Attorneys] did not achieve any practical benefit from bringing the motion." (*Ibid.*)

*Moran v. Endres* (2006) 135 Cal.App.4th 952 (*Moran*), cited by the trial court and relied on by Carol, does not dissuade us from concluding that Attorneys were "prevailing defendant[s]" under section 425.16, subdivision (c)(1). In *Moran*, the defendants challenged the trial court's order denying fees and costs after a special motion to strike in which they had "sought to dismiss the entire complaint, and instead obtained only the most illusory victory" of striking a claim for civil conspiracy. (*Moran*, *supra*, at p. 954.) The court noted that the order did not result in the striking of any factual allegations, and, because civil conspiracy is not a separate cause of action, "as a legal matter, the cause of action for conspiracy added little or nothing to [the] plaintiffs' case." (*Ibid.*) The *Moran* court, in finding no error, thus concluded: "To be blunt, [the] defendants' motion accomplished nothing, except that [the] plaintiffs were put to the cost of defending the motion. The possible recovery against [the] defendants did not change. The factual allegations which [the] defendants had to defend did not change. The work involved in trying the case did not change. . . . The case was essentially the same after the ruling on the special motion to strike as it was before." (*Id.* at p. 955; see also *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 633 [no error in denying fees and costs where granting of "anti-SLAPP motion with leave to amend was the functional equivalent of a denial"].)

*Moran* is entirely distinguishable. It does not support the conclusion that the results here were so insignificant that Attorneys derived no practical benefit from filing their motion.

. 53

We conclude that the trial court abused its discretion in denying Attorneys' request for attorney fees and costs as prevailing defendants under section 425.16, subdivision (c)(1). We will remand the case with directions that the trial court conduct proceedings to make an appropriate award based upon a determination of "the attorney fees incurred for bringing the anti-SLAPP motion challenging the causes of action stricken from the complaint. [Citation.]" (*Mann*, *supra*, 139 Cal.App.4th at p. 339.)[24]

## IV.    DISPOSITION

The order of September 15, 2020, granting in part and denying in part the special motion of appellants Law Office of Rodney W. Wickers, Rodney W. Wickers, and Christina M. Wickers to strike respondent Carol Maleti's complaint, pursuant to Code of Civil Procedure section 425.16, is reversed only to the extent that the court found that appellants were not prevailing defendants under Code of Civil Procedure section 425.16, subdivision (c)(1).  The case is remanded to the trial court for further proceedings.  On remand, the trial court is directed to enter a new order denying the motion to strike the malicious prosecution claim, granting the motion to strike the abuse of process claim, and granting appellants' request for attorney fees and costs in connection with obtaining an order striking the abuse of process claim in an amount to be determined by the trial court in further proceedings.

Appellants and respondent shall bear their and her respective costs on appeal.

---

[24] We express no view as to the appropriate amount that is awardable as attorney fees and costs as a result of Attorneys' prevailing in part on their special motion to strike.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*Maleti v. Wickers et al.*
**H048393**

Trial Court:                             Santa Cruz County Superior Court
Superior Court No.:                      19CV02276


Trial Judges:                            The Honorable Timothy R. Volkmann
                                         The Honorable Paul Burdick




Attorneys for Defendants and Appellants  Zelms Erlich & Mack
Rodney W. Wickers et al.:
                                         Rinat-Klier-Erlich
                                         Amy J. Cooper




Attorneys for Plaintiff and Respondent   The Fortress Law Firm
Carol Maleti:
                                         David P. Nemecek, Jr.

*Maleti v. Wickers et al.*
**H048393**